*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *KATHARINE RICHARDSON,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 07-216-P-S* |
| | ) | |
| *FRIENDLY ICE CREAM* | ) | |
| *CORPORATION, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

**RECOMMENDED DECISION ON DEFENDANT FRIENDLY ICE CREAM
CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
DECISION ON MOTION TO EXCLUDE**

In this disability discrimination action, removed from the Maine Superior Court (Hancock County), the defendant, Friendly Ice Cream Corporation ("Friendly"), moves to exclude certain testimony of the plaintiff's designated treating expert physician, Thomas Crowe, M.D., and for summary judgment on all claims asserted against it. I conclude that the motion to exclude is moot in the context of the summary judgment motion, and recommend that the court grant the motion for summary judgment.

**I. The Motion to Exclude**

Friendly seeks to bar the plaintiff's treating physician, Thomas Crowe, M.D., who has been duly noticed as an expert witness by the plaintiff, from testifying as to the essential functions of the plaintiff's job, or the reasonableness of any particular accommodation that might be offered to her. Friendly Ice Cream Corporation's Motion to Exclude Certain Testimony of Thomas Crowe, M.D. ("Motion to Exclude") (Docket No. 30) at 5-9. The plaintiff responds that

1

Dr. Crowe may testify as to what job functions she could perform with reasonable accommodations, and as to what those accommodations would be. Plaintiff's Memorandum of Law in Opposition to Defendant Friendly Ice Cream Corporation's Motion to Exclude ("Plaintiff's Memo") (Docket No. 41) at 2-3. Friendly's reply asserts that testimony by Dr. Crowe "concerning what constitutes plaintiff's essential job functions or reasonable accommodations thereto" should be barred by the court "[b]ecause plaintiff raises no objection to Friendly's request" to prohibit Dr. Crowe from testifying on these subjects. Friendly Ice Cream Corporation's Reply to Plaintiff's Opposition to the Motion to Exclude ("Crowe Reply") (Docket No. 42) at 1.

Friendly's argument proves too much. While the plaintiff does not contend that Dr. Crowe has any expertise in the restaurant industry or in vocational rehabilitation, the plaintiff clearly contends that "Dr. Crowe may testify based on assumed foundational facts . . . about the nature of [the plaintiff's] job [and, b]ased on those facts, . . . give his opinion whether [the plaintiff] was, at the time of her termination, capable of performing the essential functions of her position." Plaintiff's Memo at 3.

Moreover, the instant motion was filed several weeks after I ruled on Friendly's earlier motion to strike the plaintiff's designation of Dr. Crowe altogether. Docket Nos. 18 and 24. In my order denying the motion to strike, I noted Friendly's delay in asserting that the plaintiff's designation of Dr. Crowe was inadequate. Report of Hearing and Order re: Discovery Dispute (Docket No. 24) at 2. This makes Friendly's renewed arguments concerning the plaintiff's alleged failure to comply with Fed. R. Civ. P. 26 in her designation of Dr. Crowe, Motion to Exclude at 1-3 & n.1; Crowe Reply at 3-4, nothing more than reargument. That argument was addressed by my earlier ruling, and Friendly has made no showing that I should revisit it now.

2

Friendly also contends that Dr. Crowe has provided no information on certain subjects and failed to articulate the methodology used by him in forming his opinions.  Motion to Exclude at 7-9.  It does not cite to any pages of Dr. Crowe's deposition where its counsel tried unsuccessfully to elicit such information.  In short, Friendly's arguments are conclusory, without any support in the record.  In the absence of any demonstration of the means undertaken by Friendly to ascertain during its deposition of Dr. Crowe the information it now seeks, I decline to do so on my own initiative.

In any event and more importantly for consideration of the motion for summary judgment presently before me, the plaintiff does not rely on Dr. Crowe's testimony to support any assertion about the essential functions of the job at issue or about what accommodations would be reasonable in order to allow the plaintiff to perform those functions.  Plaintiff's Opposition to Defendant's Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 40), ¶¶ 23-24, 27, 29, 41, 45, 58, 60-64, 67, 69-70, 75-76, 83 and Statement of Additional Facts ("Plaintiff's SMF") (included in Docket No. 40, beginning at 13), ¶¶ 146, 173-75.  Accordingly, Friendly's motion to exclude is moot for purposes of the motion for summary judgment.

## II.  Motion for Summary Judgment

### A.  Summary Judgment Standard

*1.  Federal Rule of Civil Procedure 56.*  Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico*

3

*Trilla Reg'l Hosp. of Carolina*,  532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the outcome of the litigation."  *Id*. (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

*2. Local Rule 56*.  The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's

statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id.*  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id.*  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id.*

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

**B.  Factual Background**

*1. Threshold Procedural Issue.*  Friendly's response to the plaintiff's statement of material facts, submitted in accordance with this court's Local Rule 56, is replete with objections, no less than

71 to the 95 paragraphs in the plaintiff's statement.  Friendly Ice Cream Corporation's Reply in Opposition to Plaintiff's Statement of Additional Facts ("Defendant's Responsive SMF") (Docket No. 44).  The plaintiff has filed a document entitled Plaintiff's Responses to Defendant Friendly Ice Cream Corporation's Objections to Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF Responses") (Docket No. 45), submitted "pursuant to Local Rule 56(e)." However, Local Rule 56(e) does not provide for a response to any "objection" to an entry in an opposing party's statement of material facts.  Rather, Local Rule 56(e) quite specifically allows only a response to a request to strike made in a response to an opposing party's statement of material facts.  The plaintiff's proffered explanation, that she has "undertaken the considerable burden of responding specifically to each of Defendant's 'materiality' objections" because of the "absence of specific guidance on this issue in Local Rule 56 or in this court's decisions," Plaintiff's SMF Responses at 1 n.1, is unpersuasive.

Regrettably, the filing of the plaintiff's unnecessary and unwelcome document, unaccompanied by any request for leave to file it, occasioned the filing of Friendly Ice Cream Corporation's Motion to Strike Plaintiff's Response to Its Reply to Plaintiff's Statement of Additional Facts (Docket No. 46), which in turn encouraged counsel for the plaintiff to file Plaintiff's Memorandum of Law in Opposition to Defendant Friendly Ice Cream Corporation's Motion to Strike Plaintiff's Responses to Defendant's Objections to Plaintiff's Statement of Additional Material Facts (Docket No. 47), which was followed, in unsurprising due course, by Friendly Ice Cream Corporation's Reply to Plaitniff's [sic] Opposition to Defendant's Motion to Strike Plaintiff's Response to Defendant's Reply to Plaintiff's Statement of Additional Facts (Docket No. 48).

The filings bearing Docket Numbers 46-48 are hereby stricken.  Rather than addressing a cascade of unnecessary filings, this court has chosen to rule on objections to particular entries in a party's statement of material facts, when necessary, without the further assistance of counsel.

The document that precipitated this unfortunate flurry of filings, the plaintiff's "responses" to Friendly's objections to many of the entries in her statement of material facts, cannot be stricken because it does contain responses to the three requests to strike that Friendly properly included in its response to the plaintiff's statement of material facts.  Such responses are specifically authorized by Local Rule 56(e).  Those requests concern paragraphs 119, 121, and 179 of the plaintiff's statement of material facts.  Defendant's Responsive SMF ¶¶ 119, 121, 179.  The rest of the plaintiff's "responses" will be disregarded.

Each of the plaintiff's three responses to Friendly's requests to strike, however, fails to provide any authority or record citation as required by Local Rule 56(e) in support of its statement of the reasons why the statement of fact should be considered.  This oversight is fatal to the plaintiff's position.  Because the record citations given by Friendly in support of its requests to strike support the reasons given for those requests, paragraphs 119, 121, and 179 of the plaintiff's statement of material facts (included in Docket No. 40) are stricken.

*2. The Undisputed Material Facts.*  The plaintiff was employed by Friendly as a restaurant manager in its Ellsworth, Maine restaurant from 2000 through the end of 2006.  Friendly Ice Cream Corporation's Statement of Undisputed Material Facts in Support of the Motion for Summary Judgment ("Defendant's SMF") (Docket No. 27) ¶ 1; Plaintiff's Responsive SMF ¶ 1.  Friendly's job description for a restaurant manager includes running shifts by overseeing, directing, and assisting in the kitchen, dining, and take-out operations.  *Id.* ¶ 2.[1]  The position

---

[1] The plaintiff objects to this paragraph of Friendly's statement of material facts on the ground that the document on which this paragraph relies is hearsay, has not been authenticated as a business record, and has not had a foundation

required the plaintiff to be able to perform any and all of the duties of the other restaurant jobs. *Id*. ¶ 3. On any given shift, the plaintiff might be required to assume the job duties of any other restaurant employee, including grill cook, fountain staff, utility worker, or server. *Id*. ¶ 4. She would sometimes work the grill and lift fry baskets, serve food, scoop ice cream, or wash dishes. *Id*. ¶¶ 6-8.[2] She was also required to perform numerous cleaning activities. *Id*. ¶ 9.[3]

The job required lifting and carrying up to 50 pounds, as well as reaching, grasping, pinching, and twisting. *Id*. ¶ 10. An essential function of the job is to assist in stocking and inventorying of products. *Id*. ¶ 11. The plaintiff had to remove product from storage and prepare it for cooking, open cases of supplies, stock shelves, and rotate dated stock items. *Id*. ¶¶ 13-14. Managers who worked opening and closing shifts performed significant lifting and physical labor because these shifts were generally staffed with only one manager to maximize profitability. *Id*. ¶ 17. A closing manager might have to sweep, mop, vacuum, clean bathrooms,

---

laid "as to its creation." Plaintiff's Responsive SMF ¶ 2. In addition, she asserts that "the issue of what is an essential job function is in the nature of expert opinion testimony," the defendant has not designated an expert to testify on that subject, and the affiant "has never been disclosed as a potential witness[.]" *Id*. She does not provide the disclosures in which, she asserts, the affiant was required to have been previously identified in order to provide authentication of the document in connection with a motion for summary judgment, nor does she provide any authority for this proposition. Nor does she provide authority for the assertion that the essential function of a job may only be established by an expert witness. To the contrary, in deciding whether a specific job function is essential, courts must consider the employer's judgment as to what functions of a job are essential, "and if an employer has prepared a written description . . . [it] shall be considered evidence of the essential functions of the job." *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 25 (1st Cir. 2002) (quoting 42 U.S.C. § 12111(8) and 29 C.F.R. § 1630.2(n)(3)). Indeed, it is the burden of the plaintiff to present some evidence to rebut an employer's conclusion that a particular function is essential for a particular job. *Laurin v. Providence Hosp.*, 150 F.3d 52, 61 (1st Cir. 1998). I will not consider the plaintiff's legal arguments further. I do note, however, that the plaintiff apparently finds her own testimony as to what is an essential function of the job she performed to be admissible. Affidavit of Katharine Richardson ("Plaintiff's Aff.") (Attachment 1 to Plaintiff's SMF) ¶¶ 3, 21, 32. The affidavit of Sharon Young (Docket No. 29) sufficiently authenticates the job description document as a business record and describes how it was created. It is thus not hearsay. The objection is overruled.

[2] The plaintiff denies paragraph 6 of Friendly's statement of material facts on the ground that the cited record references do not support the factual assertions in that paragraph. Plaintiff's Responsive SMF ¶ 6. I find that the cited references do support the factual assertions that I have recited from paragraph 6.

[3] The plaintiff objects to this paragraph of Friendly's statement of material facts on the basis of "same objection as to Paragraph 2." Plaintiff's Responsive SMF ¶ 9. That objection, that the job description submitted by Friendly's is inadmissible hearsay, addresses only one of four record references cited by Friendly and has, in any event, been overruled. For the same reasons, the same objection by the plaintiff to paragraphs 10-16 of Friendly's statement of material facts is overruled.

booths, and tables, collect trash, scrub the grill, fountain, and food preparation areas, and filter fry-o-later grease. *Id.* ¶ 18.[4]

Around January 2006, the plaintiff injured her right shoulder while working. *Id.* ¶ 19. She told her doctors that her job involved heavy work, including grill work, ice cream scooping, and dishwashing, and she noticed increasing pain associated with working on the grill and lifting fry baskets. *Id.* ¶ 20. Almost everything that the plaintiff did in the course of her manager's job caused her pain and exacerbated her shoulder injury. *Id.* ¶ 21. Her doctors concluded that her right shoulder injury was a direct consequence of heavy lifting and repetitive activities that she had to perform in connection with her job. *Id.* ¶ 22.

Shortly after her injury, the plaintiff's doctors restricted her from lifting more than 10 pounds with her right arm. *Id.* ¶ 23. She told her doctor that she was having trouble lifting more than five pounds. Plaintiff's Responsive SMF ¶ 24. Her doctors directed that she limit overhead work with her right arm. Defendant's SMF ¶ 24; Plaintiff's Responsive SMF ¶ 24. They also restricted her from performing more than minimal repetitive activity with her right arm. *Id.* ¶ 25. When she complained to her doctor that her ice cream scooping duties aggravated her shoulder injury, the plaintiff's doctor further restricted her from scooping ice cream. *Id.* ¶ 26. The plaintiff underwent shoulder surgery in September 2006. *Id.* ¶ 27.[5] Before having the surgery, the plaintiff did not lose any time from work. Plaintiff's SMF ¶ 86; Defendant's Responsive SMF ¶ 86.

Before her surgery, the plaintiff could not unload items weighing more than 10 pounds from trucks; she could not cook on the grill; she could not retrieve and prepare product for

---

[4] The plaintiff denies paragraph 18 of Friendly's statement of material facts, but the denial only asserts that when closing was done by a manager and one or two servers, they all shared these tasks. Plaintiff's Responsive SMF ¶ 18. This is a qualification, not a denial.

[5] The plaintiff denies paragraph 27 of Friendly's statement of material facts, but the denial does not address the fact that she had shoulder surgery in September 2006. Plaintiff's Responsive SMF ¶ 27.

cooking; and she could not take out the trash, scoop ice cream, refill the milk machine, or flip fry-o-lator baskets.  Defendant's SMF ¶ 29; Plaintiff's Responsive SMF ¶ 29.  She dropped things if she raised her arms too high.  *Id*. ¶ 31.  To compensate for her injury, the plaintiff delegated some of her duties to other employees.  *Id*. ¶ 34.  She had a simultaneous duty to keep labor costs down and minimize the number of employees scheduled to work each shift.  *Id*. ¶ 35. She continued to have pain in her shoulder despite delegating her duties.  *Id*. ¶ 37.  In 2006, Friendly stopped having the plaintiff unload trucks and began assigning that duty to another assistant manager.  Plaintiff's SMF ¶ 96; Defendant's Responsive SMF ¶ 96.

The plaintiff's physical symptoms and pain worsened postoperatively.  Defendant's SMF ¶ 39; Plaintiff's Responsive SMF ¶ 39.  After the surgery she would wake up in the middle of the night screaming because the pain was so severe.  *Id*. ¶ 40.  By the end of October 2006, she suffered from severe pain and was not able to function in the workplace.  *Id*. ¶ 45.  For several months after the surgery, the plaintiff had no capacity to work.  *Id*. ¶ 46.  On December 7, 2006, the plaintiff remained unable to work in any capacity.  *Id*. ¶ 47.  In mid-December 2006, the plaintiff's physical condition made it difficult for her to perform basic activities of daily living such as dressing, showering, sleeping, and driving.  *Id*. ¶ 48.  She remained out of work until January 4, 2007.  *Id*. ¶ 50.

Friendly's termination policy, which the plaintiff contends did not apply to her,[6] provides that an employee is considered terminated if she fails to return to work following expiration of leave taken pursuant to the Family Medical Leave Act ("FMLA") or if she fails to return to work

---

[6] The plaintiff denies paragraph 51 of Friendly's statement of material facts, from which this sentence of the text is taken, but her denial merely asserts that the policy did not apply to Friendly's managerial employees, and sets forth what she believes to have been Friendly's policy for such employees.  This is a qualification, not a denial, of paragraph 51 of Friendly's statement of material facts.  The policy which the plaintiff contends applied to her includes termination if an employee fails to return following the expiration of a leave or failure to report for work "for an extended period." Plaintiff's Responsive SMF ¶ 51.

after 13 weeks after a work-related injury.  *Id.* ¶ 51.  The insurance invoice sent to the plaintiff by Friendly as the expiration of her FMLA leave approached advised her that her FMLA leave expired on December 3, 2006.  *Id.* ¶ 54.   The plaintiff was discharged because she failed to return to work upon the expiration of her FMLA leave.  *Id.* ¶ 55.[7]  Friendly had terminated at least one other employee who failed to return to work after his or her leave expired.  *Id.*  On January 8, 2007, Todd Mosher, the district manager for Friendly responsible for the Ellsworth store, telephoned the plaintiff and informed her that her employment had been terminated because she remained out of work and unable to perform her job after the expiration of FMLA leave.  *Id.* ¶ 57.

In early January 2007, the plaintiff's doctor released her to return to work with restrictions, including no lifting over five pounds and no repetitive activity with the right arm. *Id.* ¶¶ 63-64.   The plaintiff continued to have these restrictions on April 3, 2007.  *Id.* ¶ 65.  At the time of her release to work, the plaintiff and her doctors lacked any understanding of a definite time frame when she would be able to work without restrictions.  *Id.* ¶ 69.

The pain from the plaintiff's shoulder injury has progressively worsened since her departure from Friendly.  *Id.* ¶ 72.[8]  The plaintiff began working at Wal-Mart in March 2007, on a light-duty basis.  *Id.* ¶¶ 73-74.  She remained unable to lift over five pounds and was limited to minimal overhead work and no repetitive activity with her right arm.  *Id.* ¶ 74.  As of June 26, 2007, the plaintiff's work restrictions were changed to increase her lifting capability to 10 pounds with her right arm.  Plaintiff's Responsive SMF ¶ 75.  By December 2007, the plaintiff

---

[7] The plaintiff denies this sentence of paragraph 55 of Friendly's statement of material facts with the statement "See Response to Paragraph 51 above."  Plaintiff's Responsive SMF ¶ 55.  This refers to the plaintiff's denial that a certain Friendly policy applied to her.  That denial is not relevant to the portion of paragraph 55 that I have included in the recitation of the facts above, so the portion that I have included is deemed to be admitted because it is supported by the record citation given by Friendly.

[8] The plaintiff denies paragraph 72 of Friendly's statement of material facts, but specifically exempts from her denial the pain from her shoulder.  Plaintiff's Responsive SMF ¶ 72.

was unable to perform her light-duty job at Wal-Mart.   Defendant's SMF ¶ 77; Plaintiff's Responsive SMF ¶ 77.  By that time, the plaintiff's pain had grown so intense that she could no longer work.  *Id*. ¶ 78.

In December 2007, the plaintiff took a leave of absence from her Wal-Mart job, and her doctors opined that she lacked any work capacity.  *Id*. ¶¶ 79-80.  The plaintiff underwent a second, more invasive surgery on her shoulder in January 2008.  *Id*. ¶ 82.  She remains on leave from her job at Wal-Mart.  *Id*.  The plaintiff's doctors do not know when she will be able to return to work.  *Id*. ¶ 83.  When she is released to work, the plaintiff is likely to face permanent restrictions on overhead activity.  *Id*. ¶ 84.

Friendly's individual stores are charged if they have a workers' compensation claim that affects their bottom line.  Plaintiff's SMF ¶ 130; Defendant's Responsive SMF ¶ 130.[9]   While she was out of work for her surgery, the plaintiff received workers' compensation benefits.  *Id*. ¶ 132.  Friendly's workers' compensation administrator hired a nurse case manager, Debbie Dwyer, to work with the plaintiff to facilitate her recovery and return to work.  *Id*. ¶ 138.

Tina Emery, the general manager of Friendly's Ellsworth restaurant, was aware that Dwyer was working with the plaintiff.  *Id*. ¶¶ 88, 140.  Dwyer spoke to Emery frequently about the plaintiff's return to work and accommodation of her restrictions.  *Id*. ¶ 140.  Emery told Dwyer that Friendly could accommodate the plaintiff's return to work with light duty or transitional work involving one-handed duties.  *Id*. ¶ 143.  Emery prepared a light duty job list and gave it to Dwyer so that the plaintiff could return to work in a transitional position.  *Id*. ¶ 144.

---

[9] Friendly objects to this paragraph of the plaintiff's statement of material facts as immaterial.  Defendant's Responsive SMF ¶ 130.  Plaintiffs in employment discrimination cases may have to show that an employer's expressed reason for an adverse employment action is a pretext; the information in this paragraph could go to pretext.  The objection is overruled.  An identical objection to paragraph 138 is also overruled.

On December 8, 2006, Dwyer told Emery that the plaintiff's projected return-to-work date was January 8, 2007. *Id.* ¶ 147. Emery approached Theresa Marino, Friendly's human resources manager, with concerns about the fact that the plaintiff had many injuries and Emery needed to know what to do because she needed a manager to be able to run the restaurant. *Id.* ¶¶ 128, 148.[10]

On December 11, 2006, Mosher sent an e-mail to Marino, with a copy to Diana Beach in Friendly's compensation and benefits department, which read:

> Theresa –
> I'm sorry – but I need your help. Can you give us some guidance on Kathy Richardson? As you know she is the Manager from Ellsworth #1241 that has been out with a shoulder injury from lifting French fry baskets.
>
> She is supposed to be released the first week of Jan. after a second opinion last week revealed the opposite of what the original physician said.
>
> I would prefer to not bring her back if at all possible (as she is just going to do the same thing in '07).
>
> Can you help guide us on this?
>
> P.S. Please don't cc the restaurant on any of this – as Tina Emery (GM) is on vacation.
>
> Thanks!

*Id.* ¶ 149.[11]

Beach responded to Mosher's e-mail on the same day as follows:

> She has reached the end of her FML with Friendly as of 12/3/06 which means that our obligation of leaving her job open has ended. Due to the

---

[10] Friendly objects to paragraph 148 of the plaintiff's statement of material facts on the ground of hearsay. Defendant's Responsive SMF ¶ 148. The substance of the paragraph is not offered for the truth of the matter asserted. The objection is overruled.

[11] Friendly objects to this paragraph on the ground that it is immaterial. Defendant's Responsive SMF ¶ 149. The objection is overruled. The same is true of the same objections to paragraphs 150, 153-55, and 166 of the plaintiff's statement of material facts.

fact that she is out on WC, you may want to check with the legal department to see if you have to bring her back. I will be sending her out COBRA for her medical/dental insurance.

*Id*. ¶ 150. Mosher forwarded this response to Marino. *Id*. ¶ 153. Marino sought input from Chris Decker, Friendly's insurance manager, on the question of whether Friendly was required to reinstate the plaintiff to a manager position when she was able to return to work. *Id*. ¶ 154.

Decker provided the following advice to Marino on December 12, 2006:

> Theresa,
> Thanks for your question.
> The quick answer is that we do not have to offer her a position to RTW. We have a business to run and, as such, if there's a valid business or HR reason, not to take an employee back to work, then we don't need to do so.
> Having said the above, from a strictly Workers' Compensation standpoint, FMLA has nothing to do with whether or not we can nor [sic] should offer the employee their position back and ideally we always want to take an employee back to work as long as it's feasible. In addition, when we can't or won't take an employee back to work, it usually ends up costing FICC a lot more money and the first $250,000.00 of each Workers' Compensation claim comes directly from our company.

*Id*. ¶ 155.

On January 7, 2007, Dwyer called Emery with respect to the plaintiff's return to work. *Id*. ¶ 164. No one at Friendly ever told Dwyer that Friendly was not going to take the plaintiff back as an employee. *Id*. ¶ 166.

## C. Discussion

Count I of the complaint alleges that Friendly violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and the Maine Human Rights Act (the "MHRA"), 5 M.R.S.A. § 4551, *et seq.*, by discriminating against the plaintiff on the basis of a physical disability. Complaint (Attachment 1 to Notice of Removal, Docket No. 1) ¶¶ 4-16. Count II, the

only other count of the complaint, is asserted against a different defendant and is not at issue here.

A plaintiff who alleges disability discrimination under a theory of disparate treatment or failure to accommodate, as does the plaintiff here, must establish under both the ADA and the MHRA (1) that she suffers from a disability, (2) that she is nevertheless able to perform the essential functions of the job at issue, either with or without reasonable accommodation, and (3) that the defendant took an adverse employment action against her because of her protected disability. *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 104 (1st Cir. 2005); *Doyle v. Department of Human Servs.*, 2003 ME 61, ¶ 14, 824 A.2d 48, 54. Because the Maine Law Court has said that it is appropriate to look to federal precedent interpreting the ADA for guidance in interpreting the MHRA, *Doyle*, 2003 ME 61, ¶ 14 n.6, 824 A.2d at 54 n.6, my discussion will apply equally to both claims, *see Kvorjak v. Maine*, 259 F.3d 48, 50 n.1 (1st Cir. 2001).[12]

Friendly argues only that the plaintiff cannot show that she was able to perform the essential functions of her job at the time of her termination and that it is entitled to summary judgment on her claims as a result.[13] Friendly Ice Cream Corporation's Motion for Summary

---

[12] The plaintiff adopts this legal standard. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 39) at 6. I note that, in her introduction, she also argues that Todd Mosher's December 11, 2006 e-mail, Plaintiff's SMF ¶ 149, is a "smoking gun" that makes proof based on inferences unnecessary in this case, Opposition at 3 n.4. While this would seem to be an assertion that the plaintiff can proffer direct evidence that Friendly's actions were motivated by discriminatory animus, thus making the burden-shifting framework that includes the three-part test set out in the text inapplicable, *Doyle*, 2003 ME 61, ¶ 14, 824 A.2d at 53-54, I do not understand the plaintiff to be making that argument. If she indeed did intend to present this argument to the court through a single sentence in a footnote, her chosen method is insufficient. "It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." *Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me 1990); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 456 F.Supp.2d 131, 152-53 (D. Me. 2006).

[13] This makes it unnecessary to consider here the fact that the definition of a qualified individual under the ADA differs somewhat from the comparable definition under the MHRA. *Rooney v. Sprague Energy Corp.*, 483 F.Supp.2d 43, 51 n.8 (D. Me. 2007). The parties here agree, at least for the purposes of the instant motion, that the plaintiff suffered from a disability at the relevant time.

Judgment ("Motion") (Docket No. 26) at 1.  Thus, it asserts, she was not a "qualified person with a disability."  *Id*. at 3.

The plaintiff bears the burden of establishing that she had the ability to perform the essential functions of her job or, in the alternative, that any reasonable accommodation by Friendly would have enabled her to perform those functions.  *Rooney*, 483 F.Supp.2d at 50. Friendly bears the burden of proving that a given job function is an essential function.  *Id*.  An essential job function is a "fundamental job duty of the position at issue and does not include the marginal functions of the position."  *Id*. (citation and internal punctuation omitted).

> The ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."

*Id*. at 50-51 (quoting 42 U.S.C. § 12111(8)).

The First Circuit gives substantial weight to the employer's view of job requirements, but the employer's good-faith view of what a job entails is not dispositive.  *Id*. at 51.  The First Circuit is also reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoints and experience.  *Id.* at 51 n.9.  The analysis of essential job functions is fact-sensitive and must be conducted on a case-by-case basis.  *Id*. at 51.

The plaintiff asserts that there is a factual dispute as to the identity of the essential functions of her manager's job.  Opposition at 9.  She relies on her own testimony on this point. *Id*.  She also relies on her argument that Friendly's written job description may not be considered because it is hearsay, but I have rejected that argument.  *See* footnote 1, *supra.* Friendly points out that the plaintiff testified that she did not disagree with any of the written job description as

stating the essential functions of her job.  Motion at 5.[14]  It asserts that the essential functions of the plaintiff's manager job include lifting and carrying up to 50 pounds, reaching, grasping, pinching, twisting, and reaching overhead up to three feet, as well as building displays, receiving deliveries, unloading products from a trailer, transporting stock items to storage, cleaning the restaurant and its equipment, cooking on the grill, using the fry-o-lator, scooping ice cream, serving guests, and loading and emptying the dishwasher.  *Id*. at 5-6.  It contends that the plaintiff had to exceed her doctor's work restrictions in order to perform her essential job duties while on light duty before her surgery and that she could not perform heavy lifting, overhead lifting, and repetitive activity after her surgery.  *Id*. at 7.  The claim that the plaintiff had to exceed her doctor's work restrictions before her surgery is not supported by the paragraph of its statement of material facts cited by Friendly, which was denied by the plaintiff, Plaintiff's Responsive SMF ¶ 33, because the cited portion of the plaintiff's deposition does not support the assertion.  Deposition of Katharine Richardson ("Plaintiff's Dep.") (Attachment 2 to Plaintiff's Responsive SMF) at 161:[23]-162:1.

Rather than identify any of these specific tasks as those that the plaintiff could not perform at the time it terminated her employment, Friendly asserts that at that time the plaintiff "was indisputably unable to perform the essential functions of a restaurant manager job at Friendly's."  Motion at 10.  The plaintiff admits that she "had not been released to return to work as of December 7, 2006."  Defendant's SMF ¶ 47; Plaintiff's Responsive SMF 47.  Indeed, she admits that she was not so released until January 4, 2007.  *Id*. ¶ 50.  Friendly contends that the

---

[14] The motion cites paragraph 5 of Friendly's statement of material facts in support of this assertion.  The plaintiff objected to that paragraph on the ground that "'[e]ssential functions' is a term of art in the law and Ms. Richardson was not given a definition of that term."  Plaintiff's Responsive SMF ¶ 5.  Counsel for the plaintiff made no such objection when the question was posed to the plaintiff at deposition.  Plaintiff's Dep. at 303-04. The plaintiff has no trouble at other points in her summary judgment papers in using that term.  *See, e.g.,* Plaintiff's SMF ¶¶ 86, 120, 179.  The objection is overruled.

plaintiff "remained unable to perform the essential functions of the manager job" in January 2007, Motion at 10, because her condition had not improved since December 2006. Defendant's SMF ¶ 62; Plaintiff's Responsive SMF ¶ 62.[15]   As of January 4, 2007, the plaintiff and her doctors lacked any understanding of a definite timeframe when she would be able to return to work without these physical restrictions. *Id.* ¶ 69.

The plaintiff lists several of her job tasks that she could accomplish within the physical limitations set by her doctors before and after her surgery. Opposition at 12-15. The fact that she could perform certain functions, however, has no bearing on the question whether the functions that she could not perform were essential functions of that job. She also asserts that, in 2006, Friendly had stopped having her unload trucks and "had begun assigning that duty to another assistant manager, Lisa Doyle." *Id.* at 13. She argues that she could delegate any of the functions of her job that she could not perform under her physical restrictions to other employees. *Id.* at 14-15. In essence, she contends that, after her surgery, she could have returned to the limited-duty position that she held immediately before her surgery, with an additional restriction for lifting of only five pounds as compared to 10 pounds before the surgery. *Id.* at 15.[16]

However, as Friendly points out, Motion at 13, this court must evaluate the essential functions of a job without considering the effect of special, limited-duty arrangements. *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 25 (1st Cir. 2001). "[E]vidence that accommodations were

---

[15] The plaintiff's response to this paragraph of Friendly's statement of material facts is "Qualified[,]" pointing out that her doctor released the plaintiff to work with restrictions including no lifting over five pounds and no repetitive activity with the right arm. Plaintiff's Responsive SMF ¶ 62.

[16] The parties apparently disagree about the date of the adverse action that should be used when assessing the plaintiff's ability to perform the essential functions of her job. Friendly mentions early December 2006, mid-December 2006, and January 2007, Motion at 10-12, and asserts that she was terminated as of December 3, 2006, when her FMLA leave expired, or on December 14, 2006, when it notified her of her termination. Defendant's SMF ¶¶ 54-56. The plaintiff insists on January 8, 2007, the date when she says she learned that she had been terminated. Opposition at 12 & n.12; Plaintiff's SMF ¶¶ 171-72. My analysis assumes *arguendo* that January 8, 2007 is the operative date.

made so that an employee could avoid a particular task merely shows that job could be restructured, not that the function was non-essential." *Id*. at 26 (citation and internal punctuation omitted). "[A]n employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees." *Id*.; *Williams v. Healthreach Network,* 2000 WL 760742 (D. Me. Feb. 22, 2000), at *11.

Reasonable accommodation in this context does not include reallocation of job duties. *Soto-Ocasio v. Federal Express Corp.*, 150 F.3d 14, 20 (1st Cir. 1998) (citing cases). *See also Burnett v. Pizza Hut of Am., Inc.*, 92 F.Supp.2d 1142, 1157 (D. Kan. 2000) ("an accommodation that would result in other employees having to work harder is not required[;]" restaurant manager who could not perform physical tasks listed in job description not qualified person with disability; hiring an extra employee or assigning those tasks to other employees not reasonable accommodation under ADA); *Swartz v. McDonald's Corp*., 87 F.Supp.2d 863, 868 (N.D.Ind. 2000) ("the ADA doesn't ask whether the employer might let the employee not do the job in its entirety; it asks whether the employee can perform the essential functions"); *Hirschhorn v. Sizzler Rests. Int'l, Inc.*, 913 F. Supp. 1393, 1399 (D. Nev. 1995) (restaurant manager who could no longer lift more than 20-25 pounds and was limited in push-pull movements, stooping, and bending not able to perform essential functions of job for purposes of ADA claim). Friendly is not required to alter permanently the essential functions of the plaintiff's position as an accommodation to the plaintiff, who could not produce medical evidence as to the date, if ever, when her need for that accommodation would cease. *Plourde v. Scott Paper Co.*, 552 A.2d 1257, 1262 (Me. 1989) (MHRA case).

The plaintiff's central argument accordingly fails. She offers an alternative argument, one that is not apparent from the face of her complaint, that Friendly failed "to even discuss any

potential accommodations with" her, thereby violating its duty under the ADA to engage in an interactive process with her to determine whether reasonable accommodation may be made. Opposition at 16-17.  In some cases, an employee's request for a reasonable accommodation under the ADA may trigger a responsibility on the part of the employer to enter into an interactive process with the employee to determine an appropriate accommodation.  *Calero-Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 23-24 (1st Cir. 2004).  It is the employee's request that triggers the employer's obligation to engage in this process.  *Id.* at 24.

The plaintiff here asserts that "[t]his case is that situation." Opposition at 17.  She argues that her employer's alleged failure to engage in an informal interactive process with her constitutes a failure to provide a reasonable accommodation that amounts to a violation of the ADA.  The flaw in the plaintiff's argument, however, is that she never identifies a request made by her for an accommodation that would have triggered her employer's legal responsibility.

Additionally, in order to establish Friendly's liability for its failure to engage in the interactive process, the plaintiff must also show that she could have been reasonably accommodated, but for Friendly's lack of good faith.  *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 902 (8th Cir. 2006) (cited by the plaintiff, Opposition at 17).  As I have already discussed, the plaintiff has not submitted evidence that would allow a reasonable factfinder to conclude that she could have been reasonably accommodated by Friendly.  Moreover, in order to pursue a claim of failure to engage in the interactive process, an employee must first establish that she is a qualified individual under the ADA, that is, that she possesses the requisite skills and can perform the essential functions of the job, with or without reasonable accommodation.  *Id.* at 900; *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 514-15 & n.9 (1st Cir. 1996).  For the reasons already discussed, the plaintiff has not provided sufficient evidence

in the summary judgment record on that foundational issue to allow her to proceed on the theories she advances.

This conclusion makes it unnecessary to reach Friendly's alternative argument, that it terminated the plaintiff in accordance with its established leave policy rather than on the basis of discrimination.  Motion at 17-20.

### III. Conclusion

For the foregoing reasons, I recommend that defendant Friendly's motion for summary judgment be **GRANTED**.  Friendly's motion to exclude certain testimony from Dr. Crowe is moot for the purposes of consideration of the motion for summary judgment.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of September, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge